## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

LINDA COLON QUILES, et al.          *
                                    *
Plaintiffs                          *          **Civil No. 97-2281(SEC)**
                                    *
v.                                  *
                                    *
AMERICAN AIRLINES                   *
                                    *
Defendant                           *
**********************************

### OPINION AND ORDER

This lawsuit arises from Plaintiff Linda Colon Quiles' ("Colon") dissatisfaction with Defendant American Airlines' ("American") efforts to accommodate her physical limitations. Colon brings suit under the Americans with Disabilities Act, alleging that American failed to provide her with a reasonable accommodation. 42 U.S.C. § 12101 et seq. (1995). Colon also invokes the Court's supplemental jurisdiction under P.R. Laws Ann. tit. 1 § 501 (1982) ("Law 44").

Before the Court are the parties cross motions for summary judgment **(Docket ## 28, 31)**. For the reasons set forth below, Plaintiff's motion is **DENIED**, and Defendant's motion is **GRANTED**.

### Background

The following is a factual summary of the circumstances giving rise to this lawsuit. On December 16, 1986, Colon began working for American Airlines as a secretary in the Flight Services Department, her previous experience consisted of secretarial work. On November 26, 1990, Colon transferred to the Facilities Department to work as a cargo agent. At American Airlines, the cargo agents normally bid for their different job assignments, taking into consideration the schedules, seniority, and shifts available. The bidding process occurs every four to six months.



During August of 1992, while working as a Tax Manifest Agent, Colon began to suffer pain in her hands. On August 15, 1992, Edwin Diaz, a supervisor in the Air Freight Operations Department, referred Plaintiff to American Airlines' consultant Dr. Israel Ganapolsky, who in turn, referred Colon to the State Insurance Fund ("SIF"). On September 18, 1992, Colon was examined at the SIF and diagnosed with Bilateral Carpal Tunnel Syndrome. Following the diagnosis, Colon stopped working at American Airlines in order to receive treatment at the SIF for her condition.

On February 23, 1993, Dr. Alicia Morales of the SIF issued a determination that Colon's condition was work related, and two months later Ramon Robles Garcia from the SIF wrote a letter to American Airlines human resources manager Maria Ramos stating Colon's was limited in her ability to type up to 40%. On April 28, 1993, Colon first applied for long-term disability benefits from American's disability carrier Metropolitan Life Insurance Company. In her application, Colon indicated that she could not type at all until her condition improved, but perhaps she could work in the future as long as the position did not require constant typing. Colon also submitted a letter from Dr. Morales with her application for benefits. The letter outlined Plaintiff's restrictions indicating that both hands were currently disabled, but Colon could resume work activities on August 9, 1993. On July 13, 1994, Dr. Morales completed an "Attending Physician's Statement of Functional Capacity" used to determine Colon's eligibility for disability benefits. In the Statement, Dr. Morales indicated that Colon could not do any lifting, and that she was totally disabled for any occupation. Plaintiff received long-term disability benefits from Metropolitan Life.

On November 9, 1994, Dr. Morales released Colon to return to work while continuing her treatment. Again Dr. Morales filed an "Attending Physician's Statement of Functional Capacity" stating that Colon could not do any lifting, but that she was not disabled for her occupation. At that

time Dr. Morales found that Colon had some limitations in changing positions, pushing, pulling, twisting, grasping, handling, finger dexterity, repetitive movement, climbing, balancing, bending, stooping and squatting. By letter dated November 21, 1994, Dr. Morales notified American Airlines of the nature of Plaintiff's condition and her physical limitations, which were then deemed "temporary." Dr. Morales informed American that Colon could return to work if she was not required to do constant typing, pushing, pulling or lifting, and that Colon's condition had improved 75%.

On February 22, 1995, Dr. Thomas Murphy of American Airlines wrote to Dr. Morales to determine what the latter meant by "constant typing." On March 10, 1995, Dr. Morales completed a third "Attending Physician's Statement of Functional Capacity" indicating that Colon could not do any lifting; and she was not disabled for her occupation. The Statement also listed the same physical limitations as the previous submission. Accompanying the statement was a letter from Dr. Morales stating that Plaintiff's condition had improved, but she some limitation for constant typing.

By letter dated April 4, 1995, Dr. Murphy recommended to Maria Ramos of American Airlines that Colon be allowed to return to work with restrictions of lifting no more than 10 pounds, no constant typing, and no pushing or pulling more than 10 pounds. He also recommended that Colon return to work on a 45-day restricted duty program. American's Restricted Duty Policy defines "employees who qualify for Restricted Duty" as those who are medically limited from performing some or all of the essential functions for their specific position, but are capable of performing some tasks as defined in their medical restrictions. The policy further provides that the restricted duty status is only to be used in cases where the employee's restrictions are temporary, and is to last no longer than 45-days.

Prior to commencing the restricted duty period however, on April 6, 1995, Colon signed a restricted duty form that listed her limitations, as no pushing or pulling objects heavier than 10 pounds, no climbing, no constant typing, no typing over one-half hour without a five minute break. On that same day, Dr. Murphy spoke with Colon's doctor, Dr. Morales, concerning Colon's condition. During the conversation Dr. Morales indicated that Colon could type for 50 minutes of every hour, the restrictions were temporary, and that Colon could not type constantly. Based on this conversation, by letter dated April 11, 1995, Dr. Murphy informed Maria Ramos that Colon could not type for more than 50 minutes of each hour. A second restricted duty form was completed to reflect the 50 minute restriction.

On April 10, 1995, Colon returned to work on a 45-day restricted duty assignment. During the first two weeks of the assignment, Colon received training . She then began to fill the various positions in the Cargo department as needed during her shift, and was eventually assigned to do input work. On May 19, 1995, Dr. Morales completed another American Airlines Physician's Statement form which contained restrictions for lifting objects heavier than 10 pounds and avoiding continuous repetitive movement with the wrists. On May 26, 1995, Dr. Murphy spoke with Dr. Morales, and concluded that Colon was maximally, medically improved and her restrictions were from a worker's compensation standpoint, permanent. On June 1, 1995, Colon received a phone call from Maria Ramos, who stated that since her permanent restrictions had not been lifted, it was her last day of work.

Also, based on this diagnosis, Colon's case was sent to American Airlines' Accommodations Review Board. In April of 1996, the board determined that Colon did not qualify for an accommodation under the Americans with Disabilities Act. In September of 1996, Colon filed a

discrimination charge with the Puerto Rico Department of Labor Anti-Discrimination Unit, and subsequently brought this suit under the Americans With Disabilities Act and its Puerto Rico law equivalent, alleging that American Airlines discriminated against her by failing to provide a reasonable accommodation.

### Summary Judgment Standard

Fed.R.Civ.P. 56(b) provides that: "A party against whom a claim... is asserted... may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part [of the claims asserted against him/her]." The Court may grant the movant's motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248(1986); NASCO, Inc. v. Public Storage, Inc., 29 F.3d 28 (1st Cir. 1994). "The principal judicial inquiry required by Rule 56 is whether a genuine issue of material fact exists." Wright, Miller & Kane, Federal Practice and Procedure: Civil 3d § 2725, p.401.

In this regard, the First Circuit Court of Appeals has noted that for a dispute to be "genuine", there must be sufficient evidence to permit a reasonable trier of fact to resolve the issue in favor of the non-moving party. Santiago Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st. Cir. 2000); see also Sanchez v. Alvarado, 101 F.3d 223, 227 (1st Cir. 1996); Medina Muñoz v. R.J. Reynolds Tobacco, 896 F.2d 5, 8 (1st Cir. 1990) ("A 'genuine' issue is one that must be decided at trial because the evidence, viewed in the light most favorable to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party.") (citations omitted).

By like token, "material" means that the fact is one that might affect the outcome of the suit under the governing law.  Santiago- Ramos, 217 F.3d at 52; see also Morris v. Government Development Bank of Puerto Rico, 27 F.3d 746, 748 (1ˢᵗ Cir. 1994).  "A fact is material if it tends to resolve any of the issues that have been properly raised by the parties." Wright, Miller & Kane, supra, § 2725 at p. 419. "Not every genuine factual conflict necessitates a trial.  It is only when a disputed fact has the potential to change the outcome of the suit under the governing law if found favorably to the nonmovant that the materiality hurdle is cleared." Martínez v. Colón, 54 F.3d 980, 983-984 (1ˢᵗ Cir. 1995).

In addition, when determining whether to grant summary judgment, the Court may not weigh the evidence.  Casas Office Machines, Inc. v. Mita Copystar America, Inc., 42 F.3d 668 (1ˢᵗ Cir. 1994).  Summary judgment "admits of no room for credibility determinations, not room for the measured weighing of conflicting evidence such as the trial process entails." Id. (citing Greensburg v. Puerto Rico Maritime Shipping Authority, 835 F.2d 932, 936 (1ˢᵗ Cir. 1987).  Accordingly, if the facts permit more than one reasonable inference, the court on summary judgment may not adopt the inference least favorable to the non-moving party. Casas Office Machines, 42 F.3d at 684.

While the moving party has the burden of initially establishing that there is "an absence of evidence to support the nonmoving party's case", Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1ˢᵗ Cir. 1984); **the nonmovant has a "corresponding obligation to offer the court more than steamy rhetoric and bare conclusions."** Lawton v. State Mutual Life Assurance Company of America, 101 F.3d 218, 223 (1ˢᵗ Cir. 1996).  Furthermore, "the nonmovant must produce specific facts, in suitable evidentiary form, sufficient to limn a trialworthy issue... Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d

355, 358 (1ˢᵗ Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina Muñoz, 896 F.2d at 8, quoting Mack v. Great Atlantic and Pacific Tea Co., 871 F.2d 179, 181 (1ˢᵗ Cir. 1989) ("The evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.")

**Analysis**

**1.    The Statute of Limitations Issue**

In their motion for summary judgment, American Airlines first argues that Colon's ADA claim is time-barred because she failed to timely fulfill the administrative prerequisites to filing such a claim in federal court.  We begin our discussion by noting that the "ADA mandates compliance with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 200e, and that, absent special circumstances, such compliance must occur before a federal court may entertain a suit that seeks recovery for an alleged violation of Title I of the ADA." Bonilla v Muebles J.J. Alvarez, Inc., 194 F.3d 275, 277 (1st Cir. 1999).

Therefore, a cause of action under Title I of the ADA must be based on an administrative discrimination charge filed before the Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged wrongful act; or, if a non-federal fair employment practices ("FEP") agency is authorized to investigate the charge, the charge must be filed with the EEOC or the FEP agency within 300 days of the alleged wrongful act.  42 U.S.C. § 12117(a).  The Puerto Rico FEP agency authorized to investigate and evaluate claims of discrimination based on disability is the Antidiscrimination Unit of the Department of Labor and Human Resources ("ADU").  29 C.F.R. §§ 1601.13, 1601.14 and 1601.74.  Consequently, in Puerto Rico, a charge of discrimination must be

filed with the EEOC or the ADU within 300 days of the alleged discrimination in order to be timely. In the case at bar, American Airlines contends that Colon's September 5, 1996 EEOC administrative complaint was filed outside the limitations period. They believe that Colon's ADA claim accrued in August of 1992, and as such, should be dismissed. The question we must answer is when Colon's cause of action accrued, or in other words, when the clock began to tick on her three-hundred day filing period.

In general, the proper focus in employment discrimination cases is "upon the time of the discriminatory acts, not upon the time at which the consequences of the acts became most painful." Delaware State College v. Ricks, 499 U.S. 250, 258 (1980). Notwithstanding this general rule, the statute of limitations may be extended if the Plaintiff can demonstrate a continuing violation. Provencher v. CVS Pharmacy, Div. of Melville, Corp., 145 F.3d 5, 14 (1st Cir. 1998). This equitable doctrine creates an exception to the limitations period when the behavior is considered ongoing. Id. There are two types of continuing violations: systemic and serial. A systemic violation "refers to general practices and policies" and "has its roots in a discriminatory policy or practice; so long as the policy or practice itself continues into the limitations period, a challenger may be deemed to have filed a timely complaint." Id. (internal quotation marks omitted). While a serial violation refers to "a chain of similar discriminatory acts emanating from the same discriminatory animus . . . and where there has been some violation within the statute of limitations." Id. In any event, a continuing violation theory will fail "[e]ven where a plaintiff alleges a violation within the appropriate statute of limitations period . . . if the plaintiff was or should have been aware that he was being unlawfully discriminated against while the earlier acts, now untimely, were taking place." Id.

Civil No. 97-2281(SEC)                                                                 9

In their motion for summary judgment, American Airlines argues, that the accrual date for

her cause of action was August 15, 1992, when Plaintiff removed herself from the workforce to

receive medical attention at the State Insurance Fund.[1] The crux of American's argument is taken

*verbatim* from Plaintiff's deposition, dated July 14, 1998, where the following exchanges occurred:

Q:    When is the first date or month or year that you claimed that American first
violated your rights in this case?

A:    Okay, I believe that in 1992. If I would have been placed in another type of
position instead of continuing with Tax which is similar as Input because imputing
information in the computer - - -

Q:    When you say Tax, you mean Tax Manifest position?

A:    Correct, right – right. I could have maybe stayed there and continued taking
my treatment, my therapy ----, go to my doctors appointments and give me the shots
and, you know - - -

Q:    In 1992?

A:    Yes.

Q:    And how do you think your rights were violated back then?

A:    Well, I guess doctor Medina mentioned a reasonable accommodation, maybe
its written down somewhere, I don't know, probably - - - -, whatever. At his
deposition he mentioned that and with the information on behalf of my therapist,
hand surgeon - - - hand therapist, I'm sorry Linda Ford, she mentioned they should,
you know, fix up the area but I don't think that . . . .

Q:    - - - and your request for relief in this case, has it basically resulted from the
allegation of a violation of your rights that occurred in 1992 when your condition
first began?

A:    I feel my rights have been violated.

---

[1] The Americans with Disabilities Act became effective in July 26, 1992. 42 U.S.C. § 12101
et seq. (1995).

AO 72A
(Rev 8/82)

> Q:    And it is your understanding that the claim that you have posed in your complaint arises from that violation of your rights that occurred in 1992?
>
> A:    Correct.

(Docket #31, ex. 37, Deposition of L. Colon, pp. 64, 79). In an attempt to rebut American's time-barred defense, Colon baldly asserts that "there were several distinct and independent and discrete actionable acts of discrimination, to which Plaintiff was subjected to, that emanate from the same discriminatory animus within the statute of limitations period." (Docket # 35, at 3). Moreover, she alleges that the last act of discrimination occurred on November 17, 1997, when she received a letter from American informing her that she was being discharged from her job, effective February 23, 1998. Id. As to Colon's first rebuttal concerning the distinct and independent actionable acts of discrimination, her motion fails to document any. Moreover, her contention about the last act of discrimination misses the mark, because her administrative termination was merely a subsequent effect of alleged earlier discriminatory action that does not extend the limitations period. Pilgrim v. Trustees of Tufts College, 118 F.3d 864, 869 (1st Cir. 1997).

Finally, as we previously noted, no continuing violation theory may lie in cases where the Plaintiff knows or should have known that the discriminatory acts were being taken. Id.; See also Sabree v. United Brotherhood of Carpenters and Joiners, 921 F.2d 396, 402 (1st Cir. 1990) (holding that plaintiff's continuing violation claim must be rejected because plaintiff admitted that he believed at every turn that he was being discriminated against.). Therefore, even if we found a series of violations of Colon's rights, we would be foreclosed from granting her an equitable remedy based on her deposition testimony, where she candidly admitted that her claim arises from a violation of her rights occurring in 1992, without any showing that she did not or could not discern American's

Civil No. 97-2281(SEC)                                                                          11

discriminatory animus at that time.  As such, we agree with American that Colon's ADA claim was

filed outside the applicable statute of limitations, and is thus, time-barred.

**Conclusion**

With this ruling, we also **DENY** Plaintiff's request **(Docket #55)** for reconsideration of our

Opinion and Order dated September 30, 1999.  In that Order, we denied Plaintiff's request to file an

amended complaint as untimely and overly prejudicial to Defendant.  Plaintiff's request for

reconsideration raises no new arguments that warrant a deviation from our initial Order, and is

similarly **DENIED.**

Since Defendant has established the absence of a genuine issue of material fact on the issue

of whether Plaintiff filed a timely claim before the EEOC,  American Airline's motion for summary

judgment **(Docket # 31)** is **GRANTED.**  Pursuant to this Order, Plaintiff's federal claim under the

ADA is **DISMISSED WITH PREJUDICE.**  Colon's Commonwealth claims under Law 44 is

**DISMISSED WITHOUT PREJUDICE.**  Judgement will be entered accordingly.

**SO ORDERED.**

In San Juan, Puerto Rico, this _17 TH_ day of March, 2001.

SALVADOR E. CASELLAS
United States District Judge